Steven Rizzo, OSB No. 840853
Mary D. Skjelset, OSB No. 075840
Rizzo Mattingly Bosworth PC
1300 SW Sixth Avenue, Ste. 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
srizzo@rizzopc.com
mskjelest@rizzopc.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| J.M., et al., <br><br> Plaintiffs, <br><br> v. <br><br> KARLA MAJOR, et. al., <br><br> Defendants. | CASE NO. 6:18- CV-00739 - YY <br><br> **PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL** <br><br> (*Oral argument requested*) |

## INTRODUCTION

The Court should grant Plaintiffs' Motion to compel against the Marion County District Attorney ("MCDA"). In connection with this Reply, Plaintiffs incorporate by reference their Motion to Compel Marion County Jail ("MCJ") along with the supporting Declaration of Counsel and the Reply to MCJ's Response thereto. Plaintiffs also rely on the Declaration of Counsel and exhibits thereto.

## BACKGROUND

To recap, Plaintiffs allege that there were multiple reports and evidence of abuse occurring

1 - PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

in the Miller home regarding the Millers' treatment of J.M., A.S. and other foster children. DHS dismissed them, even reports that Casey Miller was rough with toddlers. Liberty House and the MCDA were made aware of these reports as early as June 2012, at which point they attended a Sensitive Issue Committee ("SIC") to discuss allegations of "physical abuse" of J.M. by Melissa Miller. (Decl. of Counsel, Ex. 1). DHS preferred to rely on Melissa Miller's exculpatory statements and avoided interviewing Miller. DHS removed R.L. and her sisters from their biological parents in September 2013 and placed them with the Millers. DHS knew the Millers were not minimally adequate but nevertheless overstuffed the 900 square foot home with as many as seven foster children at one time. In total, DHS had confined more than twenty children to the Miller home.

As members of the Marion County Multidisciplinary Team ("MDT"), the agency worked with the MCDA in connection with the underlying juvenile dependency proceedings and related criminal charges brought against the biological parents. Within a month of R.L.'s and her sister's placement, Miller had thrashed R.L, and broken bones in each of the infant's limbs, at different times. Miller was interviewed by Keizer police. He confessed and was arrested. All MDT members were notified (via cross reporting). DHS made it appear as though R.L.'s multiple fractures were caused by a rare genetic disorder (which is typically a defense raised by a suspect caregiver), which the child never had. Liberty House, DHS and the MCDA (the same prosecutor) were communicating regarding the prosecution of Miller and the prosecution of R.L.'s biological parents. Plaintiffs allege that DHS was motivated to deflect the true cause and minimize the full extent of R.L.'s injuries, which impacted the prosecutions. The agency avoided a child abuse assessment of A.S. and other verbal children, and waived R.L.'s victim's rights, and the MCDA offered Miller a generous plea deal. Thereby, the pair evaded any media coverage that would have alerted Miller's other victims—the twenty-some other foster children confined there. As such, the MCDA's prosecutorial decision-making directly relates to whether DHS and others engaged in a cover up.

To provide context, on June 21, 2013, the undersigned had filed the Complaint in *A.G. v. DHS,* Case No. 3:13-cv-01051-AC and served a Request for Production on August 6, 2013. The

2 -   PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S
      RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

plaintiffs alleged that they were abused by DHS-certified foster provider, James Mooney. These exact same players, i.e., DHS, Liberty House and the MCDA, were involved in *A.G.* In pertinent part, the plaintiffs alleged that DHS sought to minimize the full extent of Mooney's abuse of multiple children. Upon Mooney's arrest in June 2011, DHS and the MCDA collaborated on Mooney's prosecution. In a pattern of conduct, DHS had waived the children's victim's rights, the MCDA did not charge Mooney for his admitted abuse of at least two other female toddlers, yet sought restitution to benefit DHS for Mooney's crimes, and together, the agency and the MCDA avoided media scrutiny during the initial prosecution in 2011.

The 2013 filing of the *A.G.* Complaint exposed the conflict of potentially liable parties, i.e. DHS and the MCDA, investigating and prosecuting foster care abuse, and drew considerable media attention and inquiries to DHS and the MCDA. Thus, DHS and the MCDA sought to avoid any additional media scrutiny at the time of Miller's prosecution.

The *A.G.* plaintiffs also served a subpoena on the MCDA. In response, Mr. Armstrong appeared on behalf of the MCDA and filed a very similar motion to quash, reciting that "[r]ecords of the "Child Abuse Review Team and the multidisciplinary team" were protected under ORS 419B.035. Mr. Armstrong also argued that "the records are disclosable pursuant to an appropriate protective order." *See A.G.,* ECF 99 at 1, 3. The MCDA's motion to quash was filed on May 21, 2014. *Id.* at 4. Like in the instant case, the *A.G.* court had entered a global Protective Order four months prior, on January 28, 2014, which protected third parties subpoenaed by one of the parties to the action. (*A.G.,* ECF 84).

On July 21, 2014, the court made three pertinent rulings on the record. With respect to discovery of prosecutorial decision-making Judge Acosta ruled as follows:

> THE COURT: It seems to me that whether on the prosecutorial side of the DA's office or the victims' assistance side, communications about these plaintiffs, assistance program, any communication about these plaintiffs regarding the Mooney issue should be handed over, whether the communications are with families, whether the communications are with DHS, whether communications are internal between victims' assistance and the Marion County DA. So I didn't mean to get us focused only on, quote, families -- and that was a good point, Mr. Armstrong. Let's focus on

3 - PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

the plaintiffs. And the guiding principle should be: Are there documents in our possession that pertain to these plaintiffs and the Mooney issue?

. . .

THE COURT: And I want to be clear again. Whether the communications concerned whether to prosecute and for what charges and ultimately the decision to or not -- or to not prosecute, or whether they had to do on the victims' assistance side with respect to communications about notice of the status of the case, available assistance, remedies available through state agencies, anything that has to do with these plaintiffs arising from the Mooney issue, so that would include, as Mr. Rizzo observed, these medical records that were attached -- or maybe not -- to either -- to the correct memos and other documents.

With respect to the creation of a privilege log, which Mr. Armstrong had not prepared, Judge Acosta ruled as follows:

THE COURT: It should be clear, because the rules require it, that any documents withheld on claim of privilege or some assertion to right to privacy or confidentiality, whether it's found in a statute or regulation, some agreement or some policy, there should be a privilege log, even if something is withheld on a basis other than a -- technically a privilege. So, Mr. Armstrong, maybe none of -- there won't be anything withheld. But if there is and if you think, well, it's pertaining to these plaintiffs and it arises out of the Mooney issue, but I still don't think plaintiffs get it because of -- fill in the blank reason -- then you have to provide a privilege log to Mr. Rizzo for any of that sort of information.

MR. ARMSTRONG: I understand that, Your Honor. Based on your order, if it falls within your parameters, I expect we will be disclosing it, subject to a protective order. (Decl. of Counsel, Ex. 2).

With respect to a protective order, which Mr. Armstrong had not prepared, the colloquy was as follows:

THE COURT: So if I ordered that produced pursuant to the existing protective order, even if you think it should not be produced, if I order it produced under the protective order, does the protective order that's in place adequately address any concerns you have about the victims' assistance side disclosure?

MR. ARMSTRONG: Yes. The protective order is sufficient. (*Id.* at 24).

**REPLY**

*"Prosecution Records"*

Whatever the MCDA may mean by its use of "Prosecution Records" it does not comport

4 -   PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S
        RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

with Plaintiff's request for the MCDA's complete unredacted case files set forth in Items 1 and 2 of Plaintiffs' subpoena.

Absent a supporting Declaration, the MCDA contends – after these many months – that its response to the subpoena "was incomplete" because the subpoena "was processed" by someone "pursuant to a common procedure, or a 'track,' whereby victims obtain a portion of the records from criminal [*sic*] their case." The MCDA adds that its erroneous use of a "track" form was inconsistent with a form that should be utilized when responding to a subpoena duces tecum "in a pending court case" and that the error "was not immediately apparent." (ECF 116, MCDA Resp. at 4). There is no evidence to support these contentions. Nor does it explain the MCDA's failure to produce responsive documents after Plaintiffs "began contacting the MCDA and their counsel in early April 2019 to request a complete response" after identifying gaps in production. (ECF 112 at 3).

The MCDA does not provide a privilege log to account for the documents it has been withholding. Instead, the MCDA distracts from its failure by characterizing Plaintiffs' subpoena as seeking documents "that relate to the child abuse investigation and prosecution of Casey Miller [that] are *protected* under ORS 419B.035." *Id.* (emphasis added). That statute refers to DHS child welfare files and identifies the persons and entities to whom DHS may disclose such records. The statute does not apply directly to the requested MCDA files. Further, the statute provides that records compiled under the provisions of ORS 419B.010 to 419B.050 are "confidential" – not "protected" or privileged from discovery. *See e.g., Kahn v. Pony Express Courier Corp.,* 173 Or App 127, 138 (2001) (distinguishing between statutes which classify certain information as confidential from statutes which specifically create a privilege against discovery). Items 1 and 2 seek prosecutorial decision-making materials that are in addition to DHS child welfare records in the MCDA's possession, and it seeks the information regarding when and how the MCDA came

5 -   PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S
      RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

into possession of third party materials.[1]

The MCDA knows that DHS has already produced its child welfare records to Plaintiffs under the Protective Order. Likewise, the MCDA is also aware that following the Court's denial of Liberty House's motion to quash (ECF 42), Liberty House has produced records under a separate form of protective order, dated January 3, 2019 (ECF 67). That order was entered prior to the Court's global Protective Order that was entered on April 1, 2019 (ECF 96). The MCDA has consistently ignored that order because it protects from public disclosure the complete unredacted case files that the MCDA has withheld from Plaintiffs based on a roundabout discovery of a "track" form processing error.

Notwithstanding the MCDA's weak and unsupported account of its delay, the Response does not identify the "Prosecution Records" that the MCDA has been withholding. Rather, the vague "Prosecution Records" rubric blurs the distinction between the MCDA's complete unredacted case files and other records that found their way into the MCDA's "possession." To leverage the ambiguity, the MCDA announces that it has "separately filed a motion to quash" and "alternative request for protective order in this case" regarding what it vaguely calls "Liberty House Child Abuse Assessment Center documentation." (ECF 116 at 2).

But, the MCDA failed to timely object to Plaintiffs' subpoena. *See* Fed. R. Civ. P. 45(c)(2)(B) (a nonparty served with a subpoena duces tecum may make objections to the subpoena duces tecum within 14 days after service, or before the time for compliance, if less than 14 days); *N. Am. Co. for Life & Health Ins. v. Philpot,* 2010 U.S. Dist. LEXIS 124577, at *6-7 (S.D. Cal. Nov. 24, 2010). The MCDA's motion to quash does not raise unusual circumstance and good cause to excuse the failure, and the MCDA's unsupported account of its roundabout discovery of an erroneous use of "track" form processing smacks of delay, not unusual circumstances or good cause. *See e.g., McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D.Cal. 2002).

---

[1] The same reasoning applies to the MCDA's "Juvenile Division Records" pertaining to children and families in the Miller home, which are also still "being compiled." (ECF 116 at 4). The MCDA has abandoned its attempt to force Plaintiffs to submit separate releases from each child in the Miller home.

6 -   PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S
        RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

In cahoots with its vague Response, the MCDA uses the tardy motion to quash as a means to announce – for the first time – that "[MCDA's] records are being complied in anticipation of this court's protective order." (ECF 116 at 2). That motion suggests that the "records" in the MCDA's "possession" are the so-called "Liberty House Child Abuse Assessment Center documentation . . . protected by ORS 418.794 and 418.795." (ECF 117 at 3). The motion neglects to mention the missing MDT records, notes and memoranda, e-mail communications or R.L.'s medical records that the MDCA subpoenaed from OHSU, and there is only an indirect reference to DHS child welfare files that also found their way into the MCDA's records.

Moreover, the MCDA *never* proposed or provided a "separate" form of order, and nothing is attached to the Response or motion to quash. Nor does the MCDA explain how or why the coveted "separate" order would be any more protective than the April 1, 2019, Protective Order, that states ". . . third parties subpoenaed by one of the parties, may designate as 'Confidential' . . . documents, testimony, written responses, or other materials produced in this case if they contain information that the producing party has a good faith basis for asserting is confidential. . . ." (ECF 96 at 3). If the MCDA ever intended to produce documents under a "separate" form of order, it should have engaged in good faith conferral when Plaintiffs asked, on May 14, 2019, whether the MCDA could "agree to operate under the [current] protective order," and if not, if there was "another suggestion." (ECF 11, Ex. 14). The MCDA's holding out for a separate order is disingenuous in light of its agreement to abide the protective order in *A.G.* which is substantially similar to this Court's Protective Order.

*Attorney Work Product*

From a procedural standpoint, the MCDA failed to object on grounds of attorney-client privilege and, at least not until the filing of the Response, there was no objection made on the grounds of attorney work product protection. A non-party's failure to timely object to a Rule 45 subpoena duces tecum generally requires the court to find that any objection has been waived. *See Baker v. Ensign,* 2014 U.S. Dist. LEXIS 91972 *6-7 (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2nd Cir. 1998) (privilege against self-incrimination waived by delay); *Creative Gifts, Inc.*

7 - PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

*v. UFO*, 183 F.R.D. 568, 570 (D.N.M.1998) ("By failing to object within the time permitted by the Federal Rules, [the nonparty] has waived the right to object. *See Wang v. Hsu*, 919 F.2d 130 (10th Cir.1990)."). The MCDA offers no reason for its failure or any basis to excuse it.

It is incongruous for the MCDA to "object" and "strongly disagree" that Miller received a "light sentence" for his abuse of R.L. yet claim simultaneously that the exercise of prosecutorial decision-making and the exchange of MDT communications are protected attorney work product. A cover up is not work product. For example, evidence showing that the MCDA treated (or acquiesced in treating) Miller differently because he was a DHS-certified foster provider or because DHS had compromised the prosecution by creating a genetic cause – which was certain to benefit the Millers and DHS – are relevant to the agency's cover up. The MCDA's decision-making was intertwined with DHS's conduct and that of other MDT members, including Liberty House. That course of conduct is not protected attorney work product.

Discovery of the MCDA's reasons for offering the generous plea deal is calculated to lead to the discovery of admissible evidence. The MCDA's decision-making is not *protected* attorney work product. Even assuming *arguendo* that it were, Plaintiffs have substantial need and cannot, without undue hardship, obtain the substantial equivalent of this important evidence by other means. *See* Fed. R. Civ. P. 26(b)(A)(ii).

*Grand jury proceedings*

Again, without a supporting Declaration, the MCDA asserts that "no grand jury recordings exist." (ECF 116 at 4). The MCDA does not explain why it withheld this news until after Plaintiffs filed their Motion to Compel. The MCDA's choice of "recordation" is peculiar. As commonly defined, "recordation" means "the action or process of recording something in the official records."[2] So, is "recordation" supposed to mean that there are no electronic records whatsoever of the grand jury proceedings conducted by the MCDA beyond the indictment? If so, does that mean in turn that there are no other records, such as notes, memoranda or other indicia of the

---

[2] *See* https://www.collinsdictionary.com/us/dictionary/english/recordation.

8 - PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S
    RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

proceedings? The MCDA is silent on this point. The Court should inquire of Mr. Armstrong whether there is other evidence of what the grand jury witnesses said – both in preparation for grand jury and during the proceedings.

The MCDA should not be permitted to continue withholding this evidence based on a tardy and vague assertion of protected attorney work product. For example, the MCDA called Melissa Miller to testify as a witness at the October 28, 2013, grand jury proceeding, instead of having charged her for medical neglect. There is an inference that DHS and the MCDA agreed to call Melissa Miller to rehearse her "no known cause" statement or testify that Miller's conduct was accidental. That testimony would have served to protect the Millers and in turn protect DHS. Plaintiffs also seek to discover what other evidence was presented and learn whether the grand jury was ever told of Miller's confession. It seems odd that the MCDA has no notes or other indicia of witness preparation or the grand jury testimony itself, unless perhaps such materials have been lost or destroyed.

*E-mail communications*

Similarly, the MCDA forced Plaintiffs to file their Motion to Compel before deciding that it "will work" with Plaintiffs to "develop appropriate email search criteria" to "accomplish" what it now calls "document recovery" (as opposed to an email search) so long as it "is not unduly burdensome or unduly costly" for the MCDA. (ECF 116 at 4). No other reason is given for the MCDA's intentional and costly delay.

///
///
///
///
///
///
///
///

9 - PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

## CONCLUSION

The Court should grant the Motion and award terms. Also, in light of the MCDA's pattern of conduct, the Court should require the MCDA to inventory and account for all documents in its possession, including the MDT communications pertinent to the Millers and other children in the Miller home. This is necessary to avoid a scenario whereby the MCDA continues to withhold documents and information by treating them as "non-responsive."

Dated: November 15, 2019.

RIZZO MATTINGLY BOSWORTH PC

By: ___/s/Steven Rizzo_____
Steven Rizzo, OSB No. 840853
Mary D. Skjelset, OSB No. 075840
Rizzo Mattingly Bosworth PC
1300 SW Sixth Avenue, Suite 330
Portland, OR 97201
Tel: (503) 229-1819
Fax: (503) 229-0630
ATTORNEYS FOR PLAINTIFFS

10 - PLAINTIFFS' REPLY TO THE MARION COUNTY DISTRICT ATTORNEY'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

RIZZO MATTINGLY BOSWORTH PC
1300 SW Sixth Avenue
Suite 330
Portland, OR 97201
T: 503.229.1819 | F: 503.229.0630

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| J.M., *et. al.*,<br><br>        Plaintiff(s),<br><br>v.<br><br>KARLA MAJOR, *et. al.*,<br><br>        Defendant(s). | CASE NO. 6:18-CV-00739-YY<br><br>**CERTIFICATE OF SERVICE** |

    I am employed by the law firm of Rizzo Mattingly Bosworth PC in Portland, Oregon. I am over the age of eighteen years and not a party to the subject cause. My business address is 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201.

    On November 15, 2019, I caused to be served on all parties in this action by transmitting a true copy thereof **PLAINTIFFS' REPLY TO MARION COUNTY DISTRICT ATTORNEY'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL** in the following manner unless otherwise indicated.

### VIA ECF

James S. Smith
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
james.s.smith@doj.state.or.us
*Of Attorneys for State Defendants*

Jill Schneider
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
jill.schneider@doj.state.or.us
*Of Attorneys for State Defendants*

Elleanor Chin
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
elleanor.chin@doj.state.or.us
*Of Attorneys for State Defendants*

Bruce Armstrong
Marion County Counsel
555 Court St. NE, Ste. 5242
Salem, OR 97301
Telephone: (503) 588-5220
Fax: (503) 373-4367
barmstrong@co.marion.or.us
*Of Attorneys for Marion County District Attorney's Office*

    Dated this 15th day of November, 2019.

                                                        *s/Heather Wettlaufer*
                                                     Heather Wettlaufer, Paralegal